**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DERRICK BROOKS,

                          Plaintiff,

    v.                                No. 12-CV-624
                                              (NAM/CFH)

RYAN P. BRENNON, Secure Care Treatment
Aide, CNYPC; CHRISTOPHER D. SMITH,
Secure Care Treatment Aide, CNYPC;
LAURA SMITH-CREASER, R.N., Ward
Nurse/Supervisor for Ward 605,
CNYPC; JEFF NOWICKI, Chief of Mental
Health Treatment Services, CNYPC;
DR. TERRI MAXYMILLIAN, Director of Mental
Health Treatment Services, CNYPC;
MAUREEN BOSCO, Acting Executive Director
of CNYPC; DR. MICHAEL F. HOGAN,
Commissioner of Department of Mental Health;
BRETT DAVIS, Secure Care Treatment Aide,
CNYPC,

                          Defendants.[1]

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| DERRICK BROOKS<br>Plaintiff Pro Se<br>#172543<br>Central New York Psychiatric Center<br>P.O. Box 300<br>Marcy, New York 13403 | |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General for the<br>  State of New York<br>Attorney for Defendants<br>The Capitol | CATHY Y. SHEEHAN, ESQ.<br>Assistant Attorney General |

---

    [1] In his notice and acknowledgment of receipt of summons and complaint, defendant "Brennon" indicated that his name is spelled "Brennan." Dkt. No. 10 at 1. The Court proceeds with the latter spelling and will direct the Clerk's Office to make the necessary changes on the docket to reflect the defendant's actual name.

Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Derrick Brooks ("Brooks"), an inmate formerly in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, seven named employees at Central New York Psychiatric Center ("CNYPC") and the Commissioner for the New York State Office of Mental Health ("OMH"), violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 21. Brooks opposes the motion. Dkt. No. 25. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

### I. Background

The facts are related herein in the light most favorable to Brooks as the non-moving party. See subsection II(A) infra. At all relevant times, Brooks was confined at CNYPC's Sex Offender Treatment Program ("SOTP"). Compl. ¶ 1.

On May 24, 2011, at approximately 6:00 p.m., Brooks asked defendant Davis, a secure care treatment aide ("SCTA"), to notify the nurse administrator that he wanted to be transferred out of his ward because he feared for his safety. Compl. ¶ 17. This request

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2

was made in accordance with CNYPC's Resident Rule and Regulation Handbook.[3]  Brooks Resp. (Dkt. No. 25) at 2.  Davis replied he would never notify the nurse administrator of Brooks's concern.[4]  Compl. ¶ 18.  Defendant Smith-Creaser, a supervising nurse, approached and advised Brooks that a nurse administrator was unavailable and refused to notify another one.  Id. ¶ 19.

At approximately 6:10 p.m., defendant Brennan, a SCTA, came out of the staff's break-room and overheard Smith-Creaser refusing to call the nurse administrator for Brooks.  Compl. ¶ 20.  Brennan instructed Brooks to go to the "Side-Room," with which Brooks complied.  Id.

At approximately 6:25 p.m., Brennan called another ward.  Compl. ¶ 21.  Around five minutes thereafter, defendant Smith, a SCTA, arrived and spoke with Brennan.  Id.

---

[3]  To the extent Brooks was attempting to make out a Fourteenth Amendment violation alleging that Davis and Smith-Creaser, contrary to CNYPC's facility procedures, denied his request to see the nurse administrator, such a claim must fail.  Brooks Resp. at 11.  "Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process."  Vogelfang v. Capra, 889 F. 2d 489, 502–03 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  Further, it is well-established that "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable [Section] 1983 claim[.]"  Edwards v. Horn, No. 10-CV-6194 (RJS)(JLC), 2012 WL 473481, at *11 (S.D.N.Y.), adopted by, 2012 WL 760172 (S.D.N.Y. Mar. 8, 2012) (internal quotation mark and citation omitted) (attached to this report-recommendation); see also Sidney v. Fischer, No. 09-CV-1326 (GTS/ATB), 2012 WL 4450015, at *8 (N.D.N.Y.), adopted by, 2012 WL 4380392 (N.D.N.Y. Sept. 25, 2012) (collecting cases) (attached to this report-recommendation).  It follows that violations of CNYPC's resident handbook alone, which is a creature of state law, do not give rise to an actionable claim.  See Pratt v. Hogan, 631 F. Supp. 2d 192, 193 (N.D.N.Y. 2009) (noting OMH administers SOTP at CNYPC).  Accordingly, Brooks has failed to allege a Fourteenth Amendment claim based on his denied request to see the nurse administrator.

[4]  Brooks contends that Davis denied his request because Davis did not want to report the actions of defendants Brennan and Smith, as discussed infra.  Brooks Resp. at 2.

3

Brennan and Smith proceeded to knock Brooks to the floor and kick and punch Brooks throughout the body. Id. This assault lasted approximately fifteen minutes before Smith-Creaser obtained assistance to end the assault. Id. Brooks contends that Davis and Smith-Creaser observed the assault for the entire fifteen minutes, knowing that Brennan and Smith have a history of assaulting residents.[5] Brooks Resp. at 7, 9, 12. Smith-Creaser then examined Brooks and notified the Office of Risk Management, who sent an unidentified individual to interview Brooks and take photographs of Brooks's injuries.[6] Compl. ¶ 22. Smith-Creaser did not treat Brooks's injuries herself.[7] Brooks Resp. at 9. Smith-Creaser

---

[5] A letter dated May 11, 2009 from the Mental Hygiene Legal Service's ("MHLS") Director Massoud-Tastor to non-party Morgan, associate director of quality management, indicates that two unidentified staff persons were to avoid contact with Brooks. Dkt. No. 1-1 at 1; see id. at 2–3 (complaint dated July 10, 2009, against Brennan, from Brooks to Risk Management Department), at 4–5 (letters from MHLS and Brooks to Morgan regarding an incident in February 2010 involving Brennan and Brooks).

[6] Brooks submitted copies of undated and unmarked photos, presumably of himself. Dkt. No. 1-1 at 8–16. However, these photos are dark and unclear.

[7] To the extent that Brooks was attempting to allege a medical indifference claim against Smith-Creaser, such a claim must fail. The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." In this case, Smith-Creaser both examined and obtained assistance from another individual to treat Brooks. it cannot be said that Smith-Creaser disregarded Brooks's medical needs. Accordingly, Brooks has failed to state a deliberate medical indifference claim against Smith-Creaser.

4

also advised Brooks, without an explanation, that she placed him "on a one on one level."[8] Compl. ¶ 23.

Brooks maintains that despite the issuance of an order of separation instructing Brennan and Smith to avoid contact with Brooks, Brennan continued to verbally threaten and tease Brooks about the May 24, 2011 assault on Brooks. Compl. ¶ 24. Brennan further advised Brooks that the assault "was not the end, but only the beginning." Id. Brennan also warned other residents in Brooks's ward to refrain from getting involved with Brooks or else they may also be physically assaulted. Id. ¶ 27. Further, Smith and non-party Les Key, a SCTA, stood outside the "Side-Room" and informed Brooks that, "this is not over . . . we run this place and no one can or will stop us." Id. ¶ 25. Smith continued his threats, stating, he would "kill [Brooks] . . . ." Id.

Brooks filed numerous complaints concerning the assault incident to several individuals. Compl. ¶¶ 9–10, 15; Dkt. No. 1-2 at 5–6 (letter to Maxymillian), 9 (letter to Hogan); Dkt. No. 1-3 at 8–9 (letter to Nowicki), 16–17 (letter to Bosco); see also Dkt. No. 1-2 at 3–4, 7, 11, 13; Dkt. No. 1-3 at 2–3, 5–6, 14–15. Brooks contends that Hogan, Bosco, Maxymillian, Nowicki, and their subordinates knew of the assaults occurring at CNYPC that caused multiple residents to be hospitalized; thus, in effect, creating a policy or custom permitting the assaults to occur. Brooks. Resp. at 13–14. Brooks believes Hogan should have

---

[8] Brooks was attempting to allege a Fourteenth Amendment due process violation based on his security-classification at CNYPC. "[P]rison officials have 'full discretion' to control [prisoner classification] . . . and prisoners have 'no legitimate statutory or constitutional entitlement sufficient to invoke due process' in connection with such [classifications] . . . ." Walker v. City of New York, No. 11-CV-9611 (PKC)(JLC), 2012 WL 3037308, at * 2 (S.D.N.Y. July 25, 2012) (citations omitted) (attached to this report-recommendation). Thus, "prisoners have no liberty interest that protects them from security classification . . . ." Id. (citation omitted). Accordingly, Brooks has failed to allege this potential Fourteenth Amendment claim.

5

created a policy that terminates an employee who assaults a resident. Id. at 14.

As a result of the May 24, 2011 assault, Brooks sustained injuries including cuts, bruises, swelling of the eyes, face, and mouth, constant pain in the neck, back, arms, and hands. Brooks Resp. at 6, 9. Brooks suffered from headaches and difficulty in moving his arms. Id. at 6. Brooks also alleged that he fears retaliation for filing this civil action.[9] Compl. at 8. Since the assault, cameras and voice monitors have been installed in CNYPC to prevent staff verbal abuse and assaults on residents, assaults which have resulted in multiple residents requiring hospitalization. Brooks Resp. at 10. Brooks now seeks declaratory and injunctive relief as well as compensatory and punitive damages. Compl. at 8–9.

## II. Discussion

Viewing the facts in the light most favorable to the plaintiff, Brooks contends that his Eighth Amendment rights were violated when: (1) defendants Brennan and Smith used excessive force against him; (2) defendants Davis and Smith-Creaser failed to protect him

---

[9] Brooks's attempt to allege a First Amendment retaliation claim based on his fear of future harm for filing this civil action must fail. To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). Here, Brooks's claim is merely speculative. He does not make any factual allegations going to what adverse actions were taken against him or a causal nexus linking such adverse actions to the filing this civil action. Accordingly, Brooks has failed to attempt a First Amendment claim based on filing this action.

6

from the assault; and (3) all defendants exhibited deliberate indifference to his safety.[10]

Defendants contends that: (1) they are entitled to Eleventh Amendment immunity; (2) defendants Hogan, Bosco, Nowicki, and Maxymillian were not personally involved in the alleged constitutional violations;[11] (3) Brooks failed to state Eighth Amendment excessive force claims; (4) Brooks failed to state Eighth Amendment failure to protect claims, and (5) Brooks's claim grounded on verbal abuse is not actionable.

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that

---

[10] Brooks attempted to make out a potential Eighth Amendment claim by alleging that all defendants carried out actions to instill in him the fear of being assaulted. However, "fear of assault does not constitute a sufficiently serious injury to state a claim under the Eighth Amendment." Roseboro v. Gillespie, 791 F. Supp. 2d 353, 383 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Therefore, Brooks cannot establish an Eighth Amendment claim against defendants based on this ground.

[11] Defendants do not address the merits of Brooks's general claim against all defendants for exhibiting deliberate indifference to his safety.

7

is "plausible on its face." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 680.

Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted). However, there are instances where the court may consider documents outside those previously referenced, including when the documents are only "partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . ." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal quotation marks and citations omitted). Specifically, the following documents may be considered when construing a complaint's pleading sufficiency:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Weiss v. Incorp. Village of Sag Harbor, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (citations

omitted).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). It follows that,

> the mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's paper in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.

Robles v. Bleau, No. 07-CV-0464, 2008 WL 4693153, at *6 & n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases) (attached to this report-recommendation).

**B. Eleventh Amendment**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

9

one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Brooks seeks monetary damages against defendants for acts occurring within the scope of their duties at either the CNYPC or OMH. Thus, the Eleventh Amendment bar applies and serves to prohibit Brooks's claims for monetary damages against defendants in their official capacity.

Accordingly, defendants' motion on this claim should be granted.

## C. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of [residents] by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).[12]

---

[12] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

In this case, Brooks does not contend that Commissioner Hogan, Acting Executive Director Bosco, Director Maxymillian, or Chief Nowicki directly participated in the alleged constitutional violations. Rather, the gravamen of Brooks's complaints against these defendants is that they were in positions of power, thus always involved with anything occurring in conjunction with Brooks's confinement. However, attempts to establish personal involvement based upon the supervisory roles these defendants occupied is inappropriate. Wright, 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

Further, Brooks contends he notified Hogan, Bosco, Nowicki, and Maxymillian of the May 24, 2011 assault through written complaints. Yet, merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . . ."). Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). Brooks does not contend that Bosco, Hogan, Maxymillian, or Nowicki acted on his written complaints and neither do the exhibits attached to Brooks's complaint reflect the contrary. Thus, Brooks has failed to establish the personal involvement of Hogan, Bosco, Nowicki, and Maxymillian based on the written letters.

Furthermore, in his response, Brooks also contends that Hogan, Bosco, Nowicki, and Maxymillian knew of continuing assaults on CNYPC residents and by failing to act upon such knowledge, these defendants have created a policy or custom at CNYPC that allows for assaults to occur. However, Brooks has failed to allege how said defendants were notified of the assaults. Such a threadbare recital of the elements an Eighth Amendment claim does not meet the plausibility requirement and cannot survive when it is supported by mere conclusory statements. Harris, 572 F.3d at 72. Moreover, to the extent Brooks alleged that Hogan, Bosco, Nowicki, and Maxymillian were grossly negligent in supervising those defendants who committed the wrongful conduct, such vague and conclusory allegations are insufficient to establish personal involvement. Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that the complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights." (citations omitted)).

Accordingly, defendants' motion on this ground should be granted and defendants Hogan, Bosco, Nowicki, and Maxymillian should be dismissed from this action.

### D. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. Eighth Amendment obligations include the duty to protect prisoners from other known harms. Farmer v. Brennan, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted). It also includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.

1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer, 511 U.S. at 834. Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

### 1. Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9–10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and

14

unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9–10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

In this case, defendants contend that Brooks's allegations are insufficient to state Eighth Amendment violations because they are wholly conclusory and merely labels and legal conclusions. Defs.' Mem. of Law (Dkt. No. 21-1) at 7. Brooks contends that he complied with Brennan's order to enter the "Side-Room," where Brennan and Smith knocked him to the floor and assaulted him for approximately fifteen minutes. Brennan and Smith kicked and punched Brooks throughout the entire body. Drawing all reasonable inferences in the plaintiff's favor, this assault on Brooks was unprovoked, for prior to

entering the "Side-Room," Brooks merely asked Brennan for the nurse administrator. Selevan, 584 F.3d at 88. The need for force in response to compliant and non-threatening behavior could be deemed malicious. As such, the events as described by Brooks could plausibly represent a per se constitutional violation where the defendants acted with maliciousness. See Baskerville v. Mulvaney, 411 F.3d 45, 48–49 (2d Cir. 2005). Moreover, the unprovoked nature of the assault could plausibly vitiate against any need for the application of force as well as any threats reasonably perceived by the defendants. Scott, 344 F.3d at 291. Therefore, Brooks's contentions that he was punched and kicked for fifteen minutes throughout the body were disproportionate to the amount of force required. As such, Brooks has sufficiently alleged excessive force claims against Brennan and Smith.

Accordingly, defendants' motion on this ground should be denied.

### 2. Failure to Protect

As with other Eighth Amendment claims, in a failure to protect context, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). To state a cognizable failure to protect claim, the plaintiff must "demonstrate that 1) he was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight." Murray v. Goord, 668 F. Supp. 2d 344, 357 (N.D.N.Y. 2009) (citing Farmer, 511 U.S. at 834, Matthews v. Armitage, 36 F. Supp. 2d 121, 124–25 (N.D.N.Y. 1999), Coronado v. LeFevre, 886 F. Supp. 220, 224 (N.D.N.Y. 1995)).

To satisfy the objective prong, "the plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's

16

necessities." Murray, 668 F. Supp. 2d at 357–58 (citing Dawes v. Walker, 239 F.3d 489, 493–94 (2d Cir. 2001), overruled on other grounds, sub nom. Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).  As for the subjective prong, "a prison official acts with deliberate indifference . . . if he has knowledge that an inmate faces a substantial risk of serious harm and . . . disregards that risk by failing to take reasonable measures to abate the harm." Blaylock v. Borden, 547 F. Supp. 2d 305, 310 (S.D.N.Y. 2008).  The plaintiff may make a showing by establishing that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Murray, 668 F. Supp. 2d at 359 (citation omitted).

Here, defendants contend that Brooks failed to state failure to protect claims against Davis and Smith-Creaser because Brooks did not allege any facts that he was in fear of being attacked by staff or there was a substantial risk that he would be attacked.  Defs.' Mem. of Law at 8.  However, Brooks asserted that Davis and Smith-Creaser were aware that Brennan and Smith have a history of assaulting residents.  Additionally, in his response, Brooks asserts that both Davis and Smith-Creaser observed the assault before Smith-Creaser intervened.  Brooks was allegedly assaulted by Brennan and Smith, during which neither Davis nor Smith-Creaser intervened until fifteen minutes had passed.  Thus, given the alleged deprivation is freedom from physical assault and the allegation that Davis and Smith-Creaser merely stood by and allowed for the deprivation to take place for at least fifteen minutes, Brooks has sufficiently alleged plausible Eighth Amendment violations against Davis and Smith-Creaser.  Murray, 668 F. Supp. 2d at 357.

17

Accordingly, defendants' motion on this ground should be denied.

### 3. Verbal Threats

A claim of threats and harassment alone, without allegations of accompanied injury or use of force, is insufficient to state an Eighth Amendment claim. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) (per curiam) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983."). Here, Brooks alleged that Brennan threatened to physically assault him at a future time and Smith threatened to kill him. While these statements target Brooks's health and safety, Brooks does not allege facts going to how such threats were accompanied by injuries or the use of force. Purcell, 790 F.2d at 265. Rather, these threats were expressed to Brooks subsequent to the May 24, 2011 incident.

Accordingly, defendants' motion on this ground should be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 21) be:

   A. **GRANTED** as to the (1) Eleventh Amendment bar to § 1983 claims against all individual defendants in their official capacities; (2) personal involvement

defense for defendants Hogan, Bosco, Nowicki, and Maxymillian; (3) Eighth Amendment verbal threat claims against defendants Brennan and Smith; AND

2. **DENIED** as to the (1) Eighth Amendment excessive force claims against defendants Brennan and Smith; and (2) Eighth Amendment failure to protect claims against defendants Davis and Smith-Creaser.

2. Further **RECOMMENDED** that the Clerk's Office make necessary changes to the Docket to reflect the actual name of Brennan.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 19, 2013
        Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge