**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DERRICK BROOKS,

                Plaintiff,

       v.                               No. 12-CV-624
                                        (NAM/CFH)

RYAN P. BRENNAN, Secure Care Treatment
Aide, CNYPC; CHRISTOPHER D. SMITH,
Secure Care Treatment Aide, CNYPC;
LAURA SMITH-CREASER, R.N., Ward
Nurse/Supervisor for Ward 605,
CNYPC; and BRETT DAVIS, Secure Care Treatment Aide,
CNYPC,

                Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

DERRICK BROOKS
Plaintiff Pro se
#172542
Central New York Psychiatric Center
P.O. Box 300
Marcy, New York 13403


HON. ERIC T. SCHNEIDERMAN         CATHY Y. SHEEHAN, ESQ.
Attorney General for the               Assistant Attorney General
  State of New York
Attorney for Defendants Ryan Brennan,
Christopher D. Smith, Laura Smith-Creaser
The Capitol
Albany, New York 12224-0341

ARMOND J. FESTINE, ESQ.
Attorney for Defendant Brett Davis
258 Genesee Street, Suite 603
Utica, New York 13502


**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

Plaintiff pro se Derrick Brooks, who is currently involuntarily committed as a patient at the Central New York Psychiatric Center ("CNYPC"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Brett Davis, Ryan P. Brennan, Christopher D. Smith – Secure Care Treatment Aides ("SCTA") at CNYPC – and Laura Smith-Creaser, ward nurse/supervisor at CNYPC, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). In a Report-Recommendation and Order of this court dated June 19, 2013 (Dkt. No. 26), defendants' motion to dismiss (Dkt. No. 21) was granted insofar as (a) the Eleventh Amendment bar for claims against the individual defendants in their official capacities; (b) defendants Hogan, Bosco, Nowicki, and Maxymillian's personal involvement defense; and (c) the Eighth Amendment verbal threat claims against defendants Brennan and Smith; and (2) denied as to the Eighth Amendment (a) excessive force claims against defendants Brennan and Smith; and (b) failure to protect claims against defendants Davis and Smith-Creaser. Dkt. No. 26, at 18-19; Dkt. No. 28. Presently pending are (1) defendant Davis's motion for summary judgment (Dkt. No. 39), and (2) defendants Brennan, Smith, and Smith-Creaser's motion for summary judgment (Dkt. No. 41), all pursuant to Fed. R. Civ. P. 56.

## I. **Failure to Respond**

The Court notified Brooks of the response deadline. Dkt. No. 42. Defendants Brennan, Smith, and Smith-Creaser also provided notice of the consequence of failing to

---

[1] This matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2

respond to the motion for summary judgment.  Dkt. No. 41-1.  Despite this notice, Brooks did not respond.

"[S]ummary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default."  Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  Thus, "[t]he fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically."  Id. at 486.  Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law.  Id.; FED. R. CIV. P. 56 (c).  "A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (internal citations omitted); see also Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004) (same).  The facts set forth in defendants' Rule 7.1 Statements of Material Facts (Dkt. No. 39-2; Dkt. No. 41-3) are accepted as true as to those facts that are not disputed in Brooks's complaint.  N.D.N.Y.L.R. 7.1 (a) (3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.").

## II. Background

### A. Brooks's Version of Events

The facts are reviewed in the light most favorable to Brooks as the non-moving party.  See subsection II(A) infra.  At all relevant times, Brooks was involuntarily committed in CNYPC's Sex Offender Treatment Program ("SOTP").  Compl. ¶ 1.  On May 24, 2011,

Brooks alleges that, pursuant to the facility policy, he asked defendant Davis to notify the nurse administrator that he wanted to switch wards because he feared for his safety. Compl. ¶ 17. Davis told Brooks that he would not notify the nurse administrator of his request. Id. Subsequently, defendant Smith-Creaser came out of the nurse's station and told Brooks that there was no nurse administrator available and that she would not contact one for him. Id. ¶ 19. Defendant Brennan, who had overheard the discussion between Brooks and Smith-Creaser, came out of the break room and ordered Brooks to go into the "side room" – a room "used to temporarily separate one resident from the others" – and Brooks complied. Compl. ¶ 20; Dkt. No. 39-3, at 2. Brennan then made a phone call to another ward, and five minutes later, defendant Smith arrived at the side room and spoke with Brennan. Compl. ¶ 20. Brooks alleges that defendants Brennan and Smith then "jumped" him by knocking him to the floor, and punching and kicking him in the head, shoulders, arms, and sides. Id.; Dkt. No. 1-2, at 2.[2] Brooks further alleges that the assault took place in the presence of defendants Brooks and Smith-Creaser, and lasted for 15 minutes before Smith-Creaser requested assistance by "drop[ping] the 'Red-Phone.'"[3] Compl. ¶ 21; Dkt. No. 25, at 6-7.

Brooks's complaint suggests that Brennan was the aggressor and does not discuss whether he used force against either defendant. Compl. ¶ 21. However, the record

---

[2]  Although Brooks's complaint indirectly suggests that the attack was without provocation ("ambush"), in other portions of the record before the court, Brooks concedes that he assaulted defendant Brennan in self-defense.

[3]  Staff at CNYPC are able to summon assistance by "dropping the red phone," or removing a device from its wall mount, which causes an inaudible signal to be sent to the facility's safety-security office, altering them that assistance is needed. Dkt. No. 39-3, at 2.

provides that Brooks pleaded guilty to assault in the third degree in violation of New York

State Penal Law § 120.00 for assaulting defendant Brennan during this incident.  Dkt. No.

41-6, at 2.[4]   After accepting the guilty plea, Brooks was granted a conditional discharge if

he followed CNYPC's rules and stayed out of trouble for one year.  Id.  The record provides

that at an appearance on the revocation of the conditional discharge, Brooks conceded that

he assaulted Brennan on May 24, 2011, but contended that he was acting in self-defense.

Dkt. No. 47-1, at 58.

Brooks contends that Smith-Creaser gave him a physical examination the same day as

the alleged assault.  Compl. ¶ 22.  He also states that a representative from the office of

risk management interviewed him and took pictures of his "injuries and bruises."  Id.  Brooks

alleges that he suffered cuts; bruises; swelling of the eyes, face, and mouth; headaches;

pain in the neck, back, arms, and hands; and had difficulty moving his arms.  Dkt. No. 25, at

6, 9.

After the May 24 incident, Brooks was placed on a "one on one level."[5]  Compl. ¶ 23.

Smith-Creaser did not provide Brooks with an explanation for the designation.  Id.  In

addition, Brooks alleges that, despite an order of separation instructing defendants Brennan

and Smith to avoid contact with Brooks, Smith would come to Brooks's ward and would

"mak[e] jokes" about the May 24 incident and threaten him by telling him "this is not over."

---

[4]   During the plea colloquy, the Marcy Town Court judge stated that Brooks "did
assault . . .Brennan . . . multiple times in the face, head, neck and shoulder . . . slammed
. . . Brennan's body into a doorframe while causing severe pain to [Brennan]'s neck and
right hand, finger and forearms."  Dkt. No. 41-6, at 2.  In response, Brooks confirmed that
he committed such acts.  Id.

[5]   Brooks does not define this designation.

Id. ¶ 24. Defendant Smith told Brooks that he would "kill [his] black ass." Id. ¶¶ 24-25, 27.

Brooks seeks declaratory and injunctive relief and compensatory and punitive damages. Compl. at 8-9.

## B. **Defendants Smith and Brennan's Version of Events**

Defendants Smith and Brennan contend that, during dinner on May 24, 2011, Brooks threatened a resident after he refused to give Brooks his tray of food. Dkt. No. 41-2, at 1. Defendant Brennan told Brooks that such conduct was inappropriate. Id.; Dkt. No. 1-1, at 17. Shortly thereafter, Brooks took a bag of clean personal clothing from another resident's room. Dkt. No. 1-1, at 17. Brennan asked Brooks why he had the clean clothing when it was not his laundry day. Id. Brooks replied, "mind your own fucking business bitch." Dkt. No. 41-2, at 1. Brennan told Brooks that his actions were "inappropriate and would be documented." Id. Within five minutes of the laundry incident, Brennan observed Brooks taking a radio from another resident's room. Id. When Brennan told Brooks that his conduct was in violation of CNYPC's policy and ordered him to return the radio, Brooks stated, "yo man why you ducking with me. I ain't gonna take this shit much longer, treating me like a bitch nigga." Id.; Dkt. No. 1-1, at 17. Brennan alleges that Brooks then raised his voice at staff and clenched his fists, so Brennan directed Brooks to go to the side room. Dkt. No. 41-2, at 2. Brooks entered the side room, mumbling words under his breath, and ignored orders to sit in a chair in the back of the side room. Id. Instead, Brooks stood in the doorway of the side room and yelled "your [sic] all pussys" to staff down the hall. Id. Brennan approached Brooks and told him to sit in the blue chair at the back of the side room, to which Brooks responded, "ya know . . . you're a bitch nigga." Id.

Thereafter, Brooks "charged Defendant Brennan, throwing multiple punches at Defendant Brennan's face and head areas." Dkt. No. 41-2. at 2. In response, Brennan "attempted multiple punch defections and then wrapped [Brooks's] upper body to prevent plaintiff [from] striking him anymore." Id.; Dkt. No. 1-1, at 17. The struggle resulted in Brooks and Brennan falling into the right side of the door frame. Id. Once Brooks and Brennan were on the ground, Brooks "continued to smash Brennan's body into the side room door frame and wall." Dkt. No. 41-2, at 2. Thereafter, "extra staff" came to the side room to assist Brennan. Id. Brennan, along with "[a]nother [SC]TA performed a two person manual removal placing . . . Brooks back into the side room." Id. During this struggle, Brooks tripped Brennan and punched him in the neck and shoulder. Id. at 3. Brennan then left the side room. Id.

Dr. Joseph Colosi, director of CNYPC's medical department, also examined Brooks on May 24. Dkt. No. 41-3. Medical records taken that day reveal that Brooks's injuries were: a small abrasion to the left side of his head with mild tenderness; left elbow pain; minimal swelling of the elbow; some "facial bone tenderness"; and pain in the fourth and fifth knuckles of his left hand, with "some swelling and tenderness noted." Dkt. No. 41-4, at 2; Dkt. No. 41-3, at 1-2. X-rays of Brooks's left hand came back negative. Dkt. No. 41-2, at 3. Dr. Colosi opined that Brooks's injuries were more consistent with a struggle than being punched or kicked. Dkt. No. 41-3, at 2. Dr. Colosi also noted that, shortly after the alleged assault, Brooks was seen punching a wall with the hand he claimed was injured by defendants. Dkt. No. 41-4, at 2.

## C. **Defendant Davis's Version of Events**

Defendant Davis contends that on the evening of May 24, 2011 Brooks witnessed a conversation between defendants Brennan and Smith-Creaser by the nurses' station, wherein Brennan told Smith-Creaser that he observed Brooks in the dining area bullying other residents. Dkt. No. 39-3, at 2. Davis also "vaguely recall[ed]" a conversation about Brooks taking clean laundry belonging to other residents. Id. After witnessing this conversation, Davis went to the day room, which was at the other end of the hall from the nurses' station. Id. at 3. "Very shortly after" going to the day room, Davis "became aware that someone had 'dropped a red phone,' as [he] heard the sound of people walking quickly, doors opening and closing . . . The residents in the day room that were then under [his] supervision became aware that something was amiss . . . ." Id. Davis contends that he "did not witness the incident as occurring between [Brooks] and defendants Brennan and . . . Smith. [He] was some 50-60 feet away, at another end of the ward" and that he "at all times remained in the day room supervising those residents who were present therein." Id.

## III. **Discussion**[6]

Brooks argues that defendants Brennan and Smith violated the Eighth Amendment's prohibition on cruel and unusual punishment by using excessive force against him. He further contends that defendants Smith-Creaser and Davis violated the Eighth Amendment by failing to protect him from Brennan and Smith's assault.

---

[6] All unpublished opinions cited by the court in this Report-Recommendation are, unless otherwise noted, attached herein.

## A. **Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions

9

claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

## B. **Eighth Amendment**

Brooks contends that defendants Smith and Brennan violated the Eighth Amendment prohibition on cruel and unusual punishment because they maliciously and sadistically used excessive force against him.  He further asserts that defendants Smith-Creaser and Davis violated the Eighth Amendment for failing to protect him from the abuse.   In response, defendants contend that only minimal force was used as was necessary to control Brooks after he attacked defendants Brennan and Smith.  Although Brooks raises his excessive force claim under the Eighth Amendment, because he had been released by the New York State Department of Corrections and Community Supervision to CNYPC upon the completion of his prison term, remaining at CNYPC as a civilly-committed sex offender, his claims predicated on violations of the Eighth Amendment will be analyzed under the Due Process clause of the Fourteenth Amendment.  See, e.g., Yeldon v. Sawyer, 10–CV–266 (TJM/RFT), 2012 WL 1995839, at *4 (N.D.N.Y. Apr. 26, 2012) (holding that an involuntarily-committed individual's allegations of cruel and unusual punishment "are instead analyzed and evaluated under the due process clause of the Fourteenth Amendment") (citations omitted); Lane v. Carpinello, 07-CV-751 (GLS/DEP), 2009 WL 3074344, at *18, *22 (N.D.N.Y. Sept. 24, 2009) (citing Youngberg v. Romeo, 457 U.S. 307, 312 (1982)).  In

10

general, however, the standards to evaluate excessive force involve the same analysis

under both the Eighth and Fourteenth Amendments.  See Groves v. Davis, 11–CV–1317

(GTS/RFT), 2014 WL 4684998, at *8, citing Youngsberg, 457 U.S. at 315-16 (additional

citations omitted).

### 1. **Excessive Force**

A plaintiff seeking to demonstrate a claim of excessive force must demonstrate both

objective and subjective components.  The subjective component focuses on the

defendant's motive for his or her conduct (Hudson v. McMillian, 503 U.S. 1, 7-8 (1992)), and

requires a showing that the defendant "had the necessary level of culpability, shown by

actions characterized by 'wantonness'" in light of the particular circumstances surrounding

the challenged conduct.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999) (quoting

Wilson v. Seiter, 501 U.S. 294, 299 (1991)); see, e.g., Sims v. Artuz, 230 F.3d 14, 21 (2d

Cir. 2000); Davidson v. Flynn, 32 F.3d 27, 30, n.2 (2d Cir.1994).   The objective component

focuses on the effect of the conduct, or the "harm done, in light of 'contemporary standards

of decency.'"  See Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (quoting Hudson, 503

U.S. at 7-8).

In addressing excessive force claims for civilly-committed plaintiffs, the Second Circuit

has stated that a reviewing court is to consider:

> the need for the application of force, the relationship between the
> need and amount of force that was used, the extent of injury
> inflicted, and whether force was applied in a good faith effort to
> maintain or restore discipline or maliciously and sadistically for the
> very purpose of causing harm . . . . [I]f the force was maliciously or
> sadistically [employed] for the very purpose of causing harm in the
> absence of any legitimate government objective and it results in

11

> substantial emotional suffering or physical injury, then the conduct
> is presumptively unconstitutional . . . . [M]alicious and sadistic
> abuses of government power that are intended only to oppress or
> to cause injury and serve no legitimate government purpose
> unquestionably shock the conscience . . . . [C]onduct intended to
> injure in some way unjustifiable by any government interest is the
> sort of official action most likely to rise to the conscience-shocking
> level.

Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 251-52 (2d Cir. 2001) (internal quotation marks and citations omitted).

Here, Brooks argues that defendants Brennan and Smith used excessive force because they ambushed him, apparently without provocation, and then beat him throughout his entire body for a period of fifteen minutes, resulting in injuries. Compl. ¶ 21. Conversely, defendants insist that they used only the force necessary to control Brooks after he assaulted Brennan, and that any injures Brooks suffered are de minimis. Dkt. No. 41-8, at 4. In support of this claim, defendants submit a CNYPC internal report describing the incident; Dr. Colosi's report concluding that Brooks's injuries were likely from a struggle, rather than an assault; and Brooks's plea colloquy wherein he pleaded guilty to assaulting defendant Brennan. Dkt. No. 1-1, at 17; Dkt. No. 41-3, at 6-9; Dkt. No. 41-6.

### a. **Estoppel**

Although defendants have not explicitly raised an estoppel argument in their motion for summary judgment, they have contended that Brooks's assault conviction requires dismissal of his excessive force claim on the merits. To properly address such argument, it appears appropriate to the undersigned to assess what consequences, if any, the assault conviction may have on Brooks's excessive force claim.

12

An assault conviction does not bar an individual from bringing a claim for excessive force under section 1983, even where the conviction arises out of the same occurrence and involves the same defendants if excessive force was not relevant to, and not raised in, the criminal action.  See Jeanty v. County of Orange, 379 F.Supp.2d 533, 544 (S.D.N.Y. 2005) (holding that the plaintiff's conviction for assaulting a corrections officer did not collaterally estop the plaintiff's later excessive force claim brought under section 1983 where the criminal court "did not find that [the] plaintiff was not assaulted nor that [the] plaintiff was not subjected to unnecessary and wanton infliction of pain.").   Moreover, Brooks's section 1983 claim is not barred by Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court held that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."

Id. at 486-87.  If Brooks succeeded in his excessive force claim, the success would not necessarily demonstrate the invalidity of his conviction for assault in the third degree.  In Douglas v. Smith, the court concluded that if the plaintiff were successful on his excessive force claim, his second degree assault conviction would be invalidated because, as part of the assault plea, the plaintiff admitted that he assaulted the defendant with the intent to disrupt the officer from his lawful duties and cause injury.  No. 05–CV–1000, 2009 WL 789450, at *2 (N.D.N.Y. Jan. 26, 2009).  Since disruption of lawful duties was an element of the second degree assault charge to which the plaintiff had pleaded guilty, the court concluded that his contradictory argument in his 1983 claim could invalidate that criminal

conviction if accepted by the court. Id. By contrast, in Caban v. Hendry, the plaintiff's assault plea did not necessarily require him to contend that he prevented the defendant from performing his lawful duty. 09–CV–1227 (DNH/GHL), 2011 WL 2600620, at *4 (N.D.N.Y. Jun. 2, 2011). Thus, the court concluded that a successful excessive force claim would not invalidate the assault conviction. Id.

Like in Caban, Brooks's plea to Penal Law § 120.00 did not require him to admit that he attempted to prevent Brennan from exercising his lawful duties. Id.; Penal Law § 120.00. Further, it can be true that Brooks assaulted defendant Brennan *and* that, in response, defendants Brennan and Smith utilized force maliciously and sadistically. Indeed, Brooks contends that defendants beat him for a period of fifteen minutes and that the assault continued even after he collapsed to the floor. Dkt. No. 25, at 6, 11. Further, even if, arguendo, Brooks' excessive force claim would be barred due to the assault conviction against defendant Brennan, there is no assault conviction arising out of this incident with respect to defendant Smith.

Here, based on the record provided, it appears that when Brooks pleaded guilty to assault in the third degree, the only issue raised was whether he assaulted defendant Brennan. It does not appear that the court addressed whether Brooks used force on defendant Smith, whether either defendant used excessive force on Brooks, or if it decided which party was the aggressor. Further, although Brooks later stated that he assaulted Brennan in self-defense, he conceded that he pleaded guilty to the assault. Dkt. No. 47-1, at 58.

Therefore, the fact that Brooks pleaded guilty to assaulting Brennan in connection with the May 24 incident does not mean that Brooks is precluded from bringing his excessive

force claim against Brennan and others.

### b. **Merits of Excessive Force Claim**

Affording Brooks due solicitude, if Brooks's recitation of the facts are proven, the severity of Brennan and Smith's use of force in response to Brooks's assault on Brennan was unreasonable.  In <u>Jeanty</u>, the court provided that, "whether the individual defendants were justified in using force . . . to restrain the plaintiff after he assaulted [the officer] is 'analytically different from whether they used appropriate amount of force . . . . particularly where [the] plaintiff alleges that they continued to beat him after he was subdued.'"  379 F.Supp.2d at 545.  Although Brennan and Smith contend that Brooks was the aggressor and only minimal force was used during this period, Brooks claims that defendants punched him in the face, eyes, nose, mouth, ears, head, neck, back, arms, side, stomach, and chest for period fifteen minutes, and continued to do so even after he collapsed to the floor.  Dkt. No. 25, at 6, 9, 11.  It is not entirely clear from Brooks's complaints and submissions whether he was restrained at the time he fell to the floor.  However, viewing the facts in the light most favorable to Brooks, defendants' use of force in excess of what was needed to maintain control and order serves no legitimate governmental purpose and is in violation of the Fourteenth Amendment.  <u>Johnson</u>,  239 F.3d at 251-52 .

Thus, there are several issues of material fact that preclude summary judgment on this ground.  Even acknowledging Brooks's assault conviction, the parties dispute the amount of force used by defendants, whether defendants' use of force was reasonable in relation to the need to maintain control over Brooks, and whether defendants or Brooks acted as the aggressor.  Where "competing evidence rests on the credibility of [the plaintiff] on one hand and defendants on the other . . . the governing law that the evidence must be viewed in the

light most favorable to the non-moving party, leaves no choice but to credit [the plaintiff's] version of events . . . ." Espinosa v. McCabe, 2012 WL 4108884, *9 (N.D.N.Y. Aug. 28, 2012). Further, in a cause of action for excessive force, "[r]esolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [are] properly not decided by the district court on summary judgment." Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987).

Accordingly, because material issues of fact exist, it is recommended that Brennan and Smith's motion for summary judgment be denied on this ground.


## 2. **Failure to Protect**

Brooks alleges that defendants Davis and Smith-Craser failed to protect him because (1) they ignored his request to switch wards out of his fear for his personal safety, and (2) they failed to immediately intervene to protect him from Brennan and Smith's assault. Like a claim of excessive force, an involuntarily civilly-committed plaintiff's failure to protect claims are analyzed under the Fourteenth Amendment; however, the court notes that the "Second Circuit has yet to address the correct standard to be applied when evaluating a failure to protect claim arising out of an involuntary commitment, and there appears to be some uncertainty regarding the matter." Lane, 2009 WL 3074344, at *18.

Courts in this circuit have acknowledged that it is unclear whether a failure to protect claim set forth by a civilly-committed individual should be analyzed under a "substantial departure standard," a general substantive due process analysis, or under the less burdensome standard of deliberate indifference. See Yeldon, 2012 WL 1995839, at *7. The substantial departure standard requires the plaintiff to demonstrate that an official's

16

decision was a "'substantial departure from accepted professional judgment, practice or standards'" Vallen v. Carrol, 02-Civ-5666 (PKC), 2005 WL 2296620, *8 (S.D.N.Y. Sept. 20, 2005), (quoting Youngberg, 457 U.S. at 323). A general substantive due process analysis would ask the plaintiff to show that the defendant "intended to injure [plaintiff] in some way unjustified by [any] . . . governmental interest and most likely rise to the conscience-shocking level." Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)). Finally, a deliberate indifference analysis requires the plaintiff to demonstrate that prison officials acted with "deliberate indifference" in failing to protect the inmate from harm. See Farmer v. Brennan, 511 U.S. 825, 834.

Courts that have addressed which standard is most appropriate to apply to an involuntarily-committed plaintiff's failure to protect claims have indicated, in dicta, that the substantial departure standard and the general substantive due process standard are inapplicable to an analysis of involuntarily-committed plaintiff's failure to protect claim. McChesney v. Hogan, 08–CV–0563 (NAM/DEP), 2010 WL 3613806, at *5 (N.D.N.Y. Aug. 11, 2010) (concluding that the deliberate indifference standard "best accommodates the constitutional concerns implicated in connection with section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them in violation of their substantive due process rights"); Parks v. City of New York, 04 Civ. 2490(DC), 2006 WL 944659, at *5 (S.D.N.Y. Apr. 11, 2006) (citation omitted) ("Failure-to-protect claims are treated as challenges to conditions of confinement and, accordingly, [the] plaintiff must demonstrate deliberate indifference."); Vallen 2005 WL 2296620, at *8-*9 (concluding that substantial departure analysis and substantive due process analysis ill-suited for addressing an involuntarily-committed plaintiff's failure to protect claim). For example, in

17

Vallen v. Carroll, the court concluded that the substantial departure standard had "no applicability," to a failure to protect claim brought by an involuntarily-committed plaintiff.  Id. In doing so, the court noted that, the standard's "professional judgment" analysis was not appropriate where the defendants were "low-level staff members" who were addressing day-to-day issues, rather than"higher-level decisions."  Id.[7]

Next, the Vallen court also concluded that application of the conscious-shocking analysis of the general substantive due process standard "demands too much of such plaintiffs' substantive due process claims," and suggested that it placed too a heavy burden on an involuntarily-committed plaintiff.  2005 WL 2296620, at *9; see also McChesney, 2010 WL 3613806 at *5.  Thus, the undersigned agrees with the Vallen court and its progeny that the most appropriate standard to apply when assessing involuntarily-committed plaintiff's failure to protect claims brought under section 1983 is the deliberate indifference analysis applied to Eighth Amendment claims.

As discussed above, the deliberate indifference analysis requires the plaintiff to demonstrate that the defendants were (1) aware of a substantial risk of harm and (2) that they were deliberately indifferent to that harm.  The plaintiff must show that the deprivation was "sufficiently serious" and that the defendant had a culpable state of mind.  Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996); see also Farmer, 511 U.S. at 837; Hayes v. New York City Dept. of Corr., 84 F.3d 614, 620 (2d Cir. 1996).  A plaintiff meets his or her burden of demonstrating a sufficiently serious deprivation where he or she alleges that the

---

[7]  The court notes that in the Vallen opinion, the court concluded that it need not reach a determination of the appropriate standard to apply because the plaintiff did not meet his burden of demonstrating a plausible failure to protect claim.  2005 WL 2296620, at *9.

deprivation posed a substantial risk of serious harm.  <u>Farmer</u>, 511 U.S. at 834.  The second prong, or the "deliberate indifference" prong, is met where the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety by failing to take reasonable measures to avoid the harm.  <u>Id.</u>

First, Brooks contends that Davis and Smith-Creaser were aware of a substantial risk of harm – an assault by defendants Smith and Brennan – because he informed them that he wanted to switch wards because feared for his safety.  Compl. ¶¶ 17-19; Dkt. No. 25, at 2. Although Brooks alleges that he informed Smith-Creaser that he feared for his safety, he does not specifically argue that he told Smith-Creaser that what he feared was an assault at the hands of Smith and Brennan.  Compl. ¶ 17.  The record is similarly unclear as to whether Brooks specifically told Davis that he feared an assault by Smith and Brennan or whether Brooks assumed that Davis knew the source of Brooks's fear.  Dkt. No. 25, at 2 ¶¶ 4-5.  Brooks suggests that Davis refused his request to speak with a nurse administrator because Davis did not want to get Smith and Brennan into trouble.  Dkt. No. 25, at 2, 5. Because Brooks fails to explicitly state that he told Smith-Creaser and Davis that he wanted a transfer because he feared that Smith and Brennan would harm him, he has not proven that Smith-Creaser or Davis had actual knowledge of a serious risk of harm based on his statement that he feared for his safety.  <u>See</u> <u>e.g.</u> <u>Shell v. Brun</u>, 585 F.Supp.2d 465 (W.D.N.Y. 2008) (holding that, to establish deliberate indifference, a plaintiff must demonstrate that defendants had knowledge of a specific risk to the plaintiff's safety); <u>see also</u> <u>Farmer</u>, 511 U.S. at 838 (holding that a defendant's failure to alleviate a significant risk that he or she should have perceive, but did not, will not establish deliberate indifference).

Brooks next appears to suggest that, even absent his verbal complaints on May 24,

2011, Davis and Smith-Creaser were aware of the serious risk that Brennan posed to him because they were aware of Brennan's history of threatening Brooks with physical harm. Dkt. No. 1-1, at 3-4.  Brooks provides evidence that Mental Hygiene Legal Services contacted CNYPC's quality management office on his behalf to inform them that Brennan harassed Brooks and made threats against his safety in 2009 and 2010. Id.  However, "verbal statements alone do not indicate a substantial threat of serious harm." See, e.g., Desulma v. City of New York, No. 98 Civ. 2078, 2001 WL 798002, at *6-*7 (S.D.N.Y. July 6, 2001).  Thus, Brennan's past harassing behaviors is insufficient to establish defendants' knowledge of a substantial risk of harm.

Brooks also alleges that Davis and Smith-Creaser were aware of a risk of serious harm because they knew that both Brennan and Smith had a history of assaulting CNYPC residents. Dkt. No. 1-1, at 3-4.  However, Brooks's unsupported allegation that Brennan and Smith had a history of assaulting patients at CNYPC is not persuasive.  Brooks does not provide any factual support for this claim. Cf. Farmer, 511 U.S. at 842-43 (concluding that evidence of an official's "longstanding, pervasive, well-documented" history of attacks, along with "circumstances suggest[ing] that the defendant-official being sued had been exposed to [this] information" sufficient to allow a trier of fact to conclude that the defendant had actual knowledge of the risk).  Although a plaintiff may base his or her deliberate indifference claim on a general risk of harm that a defendant poses to all individuals at a facility, Brooks fails to contend that the earlier assaults were similar enough to the assault in question such that "remedial actions would have prevented that attack." Parris v. New York State Dept. of Corr. Services, 947 F.Supp.2d 354, 363 (S.D.N.Y. 2013) (citation omitted). Thus, Brooks fails to establish a failure to protect based in Davis and Smith-Creaser's

actual or constructive knowledge of defendants' history of assaulting residents at CNYPC.

Finally, Brooks argues that Davis and Smith-Creaser failed to protect him because they observed defendants Brennan and Smith assault him for a period of fifteen minutes, but did not intervene. In response, Davis contends that he was down the hall in the day room and did not observe the assault. Dkt. No. 39-3, at 2-3. Similarly, Smith-Creaser suggests that she did not fail to protect Brooks because she "would have no reason to believe that [Brooks] was in a position of substantial harm. To the contrary, she did have reason to believe that defendants Brennan and Smith were the ones in a position of substantial harm." Dkt. No. 41-8, at 8.

Construing the facts in the light most favorable to Brooks, if Davis and Smith-Creaser failed to intervene as they observed Brennan and Smith maliciously and sadistically assaulting Brooks, rather than exerting the minimal force necessary to gain control and order over him, Brooks will meet his burden of demonstrating that they were deliberately indifferent to a substantial risk of harm. George v. Corr. Officer Burton, No. Civ. 00-143 (NRB), 2001 WL 12010, at *3 (S.D.N.Y. Jan. 4, 2001) (citing Davidson v. Cannon, 474 U.S. 344, 348 (1986) (A failure to protect violation occurs "when prison guards simply stand by and permit an attack on an inmate by another inmate to proceed."). Due to the conflicting evidence offered by Brooks and defendants, summary judgment cannot be granted on this ground. See Nimley v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005).

Accordingly, it is recommended that defendants Davis and Smith-Creaser's motions for summary judgment on this ground be denied.

21

### C. **Qualified Immunity**

Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir.1988).

It is clearly established that civilly-committed individuals have a constitutional right to be free from excessive force. See Youngberg, 457 U.S. at 315-16. Here, is unclear whether the force allegedly used by defendants Brennan and Smith continued beyond what was necessary under the circumstances and, thus, was a malicious and sadistic application of force intended solely for the purpose of harming Brooks. Similarly, because of this clearly-established right to be free from malicious excessive force, it also cannot be said that it would be reasonable for defendants Davis and Smith-Creaser to allow use of force beyond what was needed to subdue Brooks. Granting summary judgment on the basis of a qualified immunity defense is not appropriate where there are facts in dispute that are material to a determination of a defendant's reasonableness. Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999). Here, it would be premature for this court to hold that no reasonable fact finder could conclude that it was objectively unreasonable for defendants Brennan and Smith to believe that they were acting in a manner not in violation of a clearly established constitutional right. See Lee v. Sandberg, 136 F.3d 94, 102 (1997); see also Tafari v. McCarthy, 714 F.Supp.2d 317, 353-54 (N.D.N.Y. 2010).

Accordingly, it is recommended that (1) defendant Davis's motion for summary judgment on the basis of qualified immunity, and (2) defendants Smith, Smith-Creaser, and Brennan's motion for summary judgment on the basis of qualified immunity be denied.

## IV.  **Conclusion**

For the reasons stated above, it is hereby **RECOMMENDED** that

> (1)  Defendants' Brennan, Smith, and Smith-Creaser's motion for summary judgment
>
> (Dkt. No. 41) be **DENIED** and;

> (2) defendant Davis's motion for summary judgment (Dkt. No. 39) be **DENIED**.

Pursuant to 28 U.S.C. § 636 (b) (1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen

(14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c)

(citing 28 U.S.C. § 636 (b) (1) (B)-(C)).

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993);

Small v. Sec'y of Heath and Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72, 6 (a), 6 (e).


Dated: November 17, 2014
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

23